# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| BRAULIO ALVAREZ, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-134-JEM |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| performing the duties and functions not | ) | |
| reserved to the Commissioner of | ) | |
| Social Security, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on March 27, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], filed on December 1, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On January 12, 2018, the Commissioner filed a response, and on February 5, 2018, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## I. Procedural Background

On October 1, 2013, Plaintiff filed an application for benefits alleging that he became disabled on July 1, 2013. Plaintiff's application was denied initially and upon reconsideration. On August 24, 2015, Administrative Law Judge ("ALJ") Kevin Plunkett held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On October 9, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date.

3. The claimant has the following severe impairment: multiple sclerosis.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 461.967(b), lifting and/or carrying twenty pounds occasionally and ten pounds frequently. The claimant is able to engage in sitting, standing, or walking for six hours each. The claimant can push and/or pull as much as he can lift and/or carry. The claimant can occasionally feel with his right and left upper extremities. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds The claimant can occasionally balance, crouch, crawl, and kneel. The claimant can never be exposed to unprotected heights or moving mechanical parts. The claimant can never operate a motor vehicle.

6. The claimant is capable of performing past relevant work as a bodyguard and security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability from July 1, 2013, through the date of the decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (*O'Connor-Spinner I*); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

3

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him or her from doing her previous work, but considering his or her age, education, and work experience, it must also prevent him or her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's Residual Functional Capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite

her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner I*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*, 245 F.3d at 889 ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ's assessment of Plaintiff's ability to work was not adequately supported and not based in the evidence of record. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

#### A. Treating Neurologist

Plaintiff's treating neurologist completed a residual functional capacity questionnaire

5

addressing Plaintiff's work-related limitations caused by his multiple sclerosis. He opined that Plaintiff has marked limitations in a number of work-related abilities, including the need to take unscheduled breaks 2-3 times per day for 10-15 minutes each, the need to shift positions at will and to sometimes use a cane. He wrote that Plaintiff was likely to be absent for work about three days per month because of impairments or treatment, and that Plaintiff's symptoms would occasionally interfere with attention and concentration needed to perform simple work tasks during a typical workday. In this case, the ALJ stated that he gave "little weight" to the opinion of the treating neurologist. Plaintiff argues that the ALJ erred in failing to give controlling weight to the treating neurologist's opinions regarding Plaintiff's ability to work and that his description of the decision not to give it weight was illogical. The Commissioner argues that the ALJ properly considered his opinion.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

In this case, the ALJ gave three reasons for his decision to give little weight to the treating

neurologist's opinion: that he did not have a chance to review the more recent medical records, which showed effective treatment; that the opinion is conclusory because it did not complete all of the narrative questions; and that it was inconsistent with examination visits. Instead of giving weight to the treating specialist, the ALJ instead gave great weight to the opinions of non-examining agency physicians who merely reviewed Plaintiff's medical records. Plaintiff argues that the reasons for discounting the opinion of Plaintiff's treating neurologist are illogical and inconsistent with his reasons for giving great weight to the opinions of non-examining physicians. The consultants drafted their opinions in December 2013 and August 2014, well before the neurologist's opinion in January 2015. If the ALJ thought there might have been a significant change in Plaintiff's symptoms after January 2015, that would have been a reason to fully develop the record to obtain that information, *see, e.g.,* 20 C.F.R. §§ 404.1512(b), 416.919(b), not to give more weight to even older opinions. Similarly, although the ALJ stated that the opinion was inconsistent with examination records, he does not point out any inconsistencies, leaving the Court unable to trace the path to his conclusions. His last reason for discounting the opinion is that it is conclusory because it left a narrative question blank. However, review of the opinion is inconsistent with the ALJ's characterization. He concluded that the opinion about the number of days per work Plaintiff would miss, section l of question 10, was unsubstantiated, despite the neurologist completing sections *a* through *l* of question 10, since question 11, asking about "any other limitations," was not completed. The Court again is unable to ascertain why the absence of *additional* limitations means that the limitations *already described* are insufficient to support the neurologist's opinion about how they affect Plaintiff's ability to work. Again, this lack of logical reasoning is particularly troubling when it was used to discount the opinion of Plaintiff's treating neurologist.

Generally, the opinion of a physician who has examined the patient is given more weight than that of a physician who has only reviewed the medical record. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) (quoting *Gudgel*, 345 F.3d at 470); *see also Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) ("[T]he problem is that the ALJ has not pointed to any logical reason to discount the opinions of the only examining mental-health professionals, one of whom was the state agency's own consultative examiner, in favor of a non-examining reviewer."); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Furthermore, because the ALJ failed to give controlling weight to Plaintiff's treating neurologist, he was required to analyze the following factors to describe what weight to give their opinions: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."). The ALJ failed to thoroughly address these factors, and failed to identify any treating or examining physicians whose opinions as to Plaintiff's limitations were given more than "little" weight. The Court is left unable to trace a path from the medical evidence in the record to

the ALJ's conclusions about the Plaintiff's ability to work. On remand, the ALJ must thoroughly address the evidence of Plaintiff's physical limitations, and is reminded of his responsibility to develop the record, which may include ordering additional examinations or contacting medical sources to obtain records and evidence necessary to making the determination. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b).

B. Combination of Impairments

Plaintiff argues that the ALJ also failed to consider the combination of Plaintiff's impairments and to incorporate the limitations from his non-severe impairments into the RFC. The record reflects that Plaintiff has diagnoses of major depressive disorder and post-traumatic stress disorder, degenerative disc disease of the cervical spine, and ulcerative colitis, all of which the ALJ found to be non-severe impairments. Plaintiff first argues that the ALJ failed to properly evaluate Plaintiff's depression and failed to explain how his major depressive disorder did not have "more than minimal limitation" on Plaintiff's work-related activities. The ALJ disregarded Plaintiff's scores on the Global Assessment of Functioning (GAF) scale, which ranged from 45-56, numbers that indicate that Plaintiff experienced moderate-to-serious symptoms and difficulties in social or occupational functioning. He concluded that Plaintiff has experienced no extended episodes of decompensation and that his mental impairments of major depressive disorder and post-traumatic stress disorder are controlled through monitoring and medication, so "no more than minimally limit the claimant's ability to perform basic work activities." As Plaintiff argues, "A diagnosis of 'major depression' means, by definition, that an individual's 'symptoms cause clinically significant distress

9

or impairment in social, occupational, or other important areas of functioning.'" *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 693 (7th Cir. 2016) (*O'Connor-Spinner II*) (noting GAF score of "50, indicating serious symptoms or functional impairments" and finding error in conclusion that depression was not a severe impairment) (quoting Am. Psychiatric Ass'n., Diagnostic & Statistical Manual of Mental Disorders 356 (4th ed. text revision 2000)).

Plaintiff also argues that the ALJ failed to explain how he incorporated limitations from Plaintiff's degenerative disc disease of the cervical spine, major depressive disorder, and post-traumatic stress disorder into the RFC. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The ALJ did not explain how the RFC incorporated any limitations experienced by Plaintiff as a result of his depressive disorder, post traumatic stress disorder, degenerative disc disease, or ulcerative colitis. Despite recognizing that the record contained multiple reports of Plaintiff's difficulties with gait and balance and his use of a cane and wheelchair, the ALJ explained that he did not include Plaintiff's use of a cane in the RFC because Plaintiff attended some of his medical appointments without using an assistive device. Although Plaintiff may not need an assistive device

all of the time, the RFC determination must address all Plaintiff's work-related limitations, including occasional cane use. *See, e.g., Ross v. Barnhart*, 119 F. App'x 791, 795 (7th Cir. 2004) ("'The RFC is an assessment of what work-related activities the claimant can perform despite her limitations.' In considering a claimant's RFC, an ALJ is expected to take into consideration all relevant evidence, both medical and non-medical.") (quoting *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)); 20 C.F.R. §§ 404.1545(a)(1), (a)(3); 416.1545(a)(1), (a)(3). The ALJ's failure is particularly concerning because the VE testimony at the hearing means that Plaintiff's ability to perform past work if he needed to use a cane at work.

The ALJ erred in failing to consider the combination of Plaintiff's impairments. On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact his severe depressive disorder has on his other impairments and his ability to work, including a thorough evaluation of whether it is a severe or non-severe impairment.

    C.    Plaintiff's Testimony

Plaintiff also argues that the ALJ erred in his evaluation of Plaintiff's statements about his symptoms. The ALJ concluded that Plaintiff is not as limited as he alleged because he has not been entirely complaint in taking his prescribed medications. When considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding her symptoms are credible, an ALJ is also required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack

11

of medical care before drawing a negative inference. . . . The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)). In this case, the ALJ did not ask Plaintiff about his compliance with prescribed medications at the hearing and his opinion does not address the reasons for his noncompliance that appear in the record, including severe side effects. A.R. 1104, 1144.

The Court is also concerned by the ALJ's treatment of Plaintiff's daily activities, listing some very basic activities of necessary housework, reading, and watching television as evidence that his work-related activities are not as limited as claimed. To the extent that the ALJ is implying that these meager activities indicate an ability to work, the Court notes that the Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that equate a plaintiff's ability to take care of his personal hygiene, children, or household chores with the ability to work. *See, e.g.*, *Zurawski*, 245 F.3d at 887; *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006). It appears that the ALJ failed to take into account "critical differences between activities of daily living and activities in a full-time job," such as the fact that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also, e.g., Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the

12

Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work."). Particularly concerning is the ALJ's conclusion that Plaintiff's "return to school suggests that [he] believes there are some positions he will be able to perform in the national economy." A.R. 24. Not only did the ALJ fail to explain how the ability to attend class on a part-time basis translates to the ability to attend a workplace every day and complete a full day's work, but Plaintiff testified that he was unable to complete his course because he missed too many days due to his fatigue, depression, and pain. A.R. 72-73. Not only does attending class on its own not indicate an ability to work, but the record reflects that Plaintiff was not even able to successfully complete part-time coursework. The Court cannot trace the ALJ's reasoning from Plaintiff's failed attempt to take a class to his conclusion that Plaintiff can work, especially since "[a] desperate person might force h[im]self to work – or . . . certify that []he is able to work – but that does not necessarily mean []he is not disabled." *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms.").

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to his conclusions about Plaintiff's RFC, and must thoroughly address the medical evidence in the record. The ALJ is reminded that the Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence in the record. "An ALJ cannot rely only on the

evidence that supports [his] opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 21st day of May, 2018.

                                                s/ John E. Martin
                                                MAGISTRATE JUDGE JOHN E. MARTIN
                                                UNITED STATES DISTRICT COURT

cc:    All counsel of record